**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:14-CV-00195-RLV-DCK**

| | |
|---|---|
| ECLIPSE PACKAGING, INC., )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>STEWARTS OF AMERICA, INC. AND )<br>INDUSTRIAL BRUSH CO., INC., )<br>)<br>**Defendants.** )<br>) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff Eclipse Packaging, Inc.'s Motion for Partial Summary Judgment (the "Motion"). [Doc. No. 21]. Defendant Stewarts of America, Inc. (hereinafter, "Defendant Stewarts") has opposed the Motion. [Doc. No. 23]. Having been fully briefed, the Plaintiff's Motion is now ripe for disposition. For the reasons specified more fully below, Plaintiff's Motion for Partial Summary Judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**I.  BACKGROUND**

A.  Introduction

Plaintiff is a North Carolina company engaged in the business of manufacturing food-grade plastic sheets and bags. [Doc. No. 21-1] at pp. 2-3, 11; *see also* [Doc. No. 1] at ¶ 1; [Doc. No. 12] at ¶ 1. Defendant Stewarts is a South Carolina corporation engaged in the business of selling industrial brush rollers, as well as the manufacturing and reselling of commercial pinhole systems – each of which can be used by a plastic sheet manufacturer, such as Plaintiff, in the course and scope of its business. *See* [Doc. No. 21-1] at p. 8; *see also* [Doc. No. 1] at ¶ 2; [Doc. No. 12] at ¶

2. This lawsuit arises out of the Plaintiff's use of a brush roller containing Tampico fibers,[1] which was manufactured by Industrial Brush Co., Inc. ("Industrial Brush")[2] and sold to the Plaintiff by Defendant Stewarts. *See* [Doc. No. 21-1] at p. 3; *see also* [Doc. No. 1] at ¶¶ 7-11; [Doc. No. 12] at ¶¶ 7-11. Tampico brushes are "widely used in the industry[.]" [Doc. No. 21-1] at p. 28. However, Plaintiff claims that the particular Tampico brush sold to it by Defendant Stewarts was defective and caused damage to Plaintiff's products, (Doc. No. 21-1) at p. 28; accordingly, Plaintiff asserts contract and tort claims against Defendant Stewarts arising from the alleged defective nature of the Tampico brush. *See*, *e.g.*, [Doc. No. 1].

B. <u>Facts Relevant to the Instant Motion</u>

Plaintiff's Statesville manufacturing plant utilizes a "hot pin perforating" system to puncture food-grade plastic films (thereby creating "pinholes" in the films) for a single client, referred to in the record as Cargill Kitchen Solutions (hereinafter, "Cargill"). [Doc. No. 21-1] at pp. 5, 8, 18. The perforating system uses an external heat source to soften films as they pass through the machine, which eases the perforating process. *See id.* at pp. 6, 9. In order to correctly produce the plastic films, the perforator also utilizes a brush roller to create uniform pinholes. *Id.* at pp. 3, 6-7. For many years, a nylon brush satisfied this function and assisted Plaintiff in producing acceptable films for Cargill. *Id.* at p. 7. Eventually, however, Cargill became dissatisfied with the pinholes fashioned by the perforator. *Id.* at pp. 6-7. As a result, Cargill contacted Plaintiff and requested that it find a way to create "more uniform pinhole[s]" in its plastic films. *Id.* In an effort to satisfy Cargill, Plaintiff began collaborating with Defendant Stewarts on techniques to improve its perforation system. *Id.* at pp. 6-7, 24.

---

[1] "Tampico" fibers are non-synthetic, natural white fibers made from vegetables. [Doc. No. 23] at pp. 8, 17.
[2] Industrial Brush was formerly a defendant in this litigation. However, Plaintiff settled all claims against Industrial Brush and voluntarily dismissed the defendant from this action, *with prejudice*, on February 18, 2016. *See* [Doc. No. 28].

After evaluating Plaintiff's setup, Defendant Stewarts quoted Plaintiff with two options to improve the pinhole perforation system:[3] first, Plaintiff could replace the entire perforation machine with a newer model; or, second, Plaintiff could replace the system's nylon brush roller with one equipped with Tampico fibers. *See*, *e.g.*, [Doc. No. 21-1] at pp. 9-10, 14. After giving the two options consideration, Plaintiff chose to replace the nylon brush with a Tampico brush and declined to replace the entire perforation machine. *See id.* at pp. 14, 16, 25-26.

Plaintiff used the Tampico brush from September 2012 through December 2012. [Doc. No. 21-1] at p. 20. While the Tampico brush roller was in use, Cargill informed Plaintiff that Tampico fibers were contaminating the plastic films and making them unusable in its food business. *See id.* at pp. 20-22. Consequently, Plaintiff recalled several thousand pounds worth of plastic film and credited Cargill the cost. *Id.* at p. 21. Plaintiff then filed this suit seeking relief from Defendant Stewarts for the damages it sustained from the use of the allegedly defective Tampico brush roller. *See* [Doc. No. 1]. Plaintiff now seeks partial summary judgment on Defendant Stewarts' Fourth Affirmative Defense of contributory negligence. *See* [Doc. No. 12] at p. 5; *see also* [Doc. No. 21]; [Doc. No. 22]. This matter is currently scheduled for trial during the Court's May 2016 term.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to support or oppose a summary judgment motion, a party is required to cite to "materials in the record, including depositions, documents, electronically stored information,

---

[3] Throughout its brief, Plaintiff claims that Defendant Stewarts "recommended" these two options. However, there is a dispute in the record as to whether Defendant Stewarts affirmatively recommended these options or merely quoted them to Plaintiff. *Compare* [Doc. No. 21-1] at pp. 9-10, 14 *with* [Doc. No. 21-1] at p. 25 ("I don't know if [the suggestion to replace the perforation system] was a recommendation. It was in a quote.").

affidavits or declarations, . . . admissions, interrogatory answers, or other materials;" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *accord Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) (applying former version of Rule 56); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (same).

It is well-established that the mere existence of "some" factual disputes will not defeat summary judgment; rather, the dispute presented must be "genuine" and concern "material" facts. *Anderson*, 477 U.S. at 247-248 (emphasis in original); *see also Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Only disputes over facts that might affect the outcome of the suit under relevant governing law fall within that category. *See*, *e.g.*, *Reid v. Dalco Nonwovens, LLC*, ___ F.Supp.3d ___, ___, 2016 WL 51271, at *6 (W.D.N.C. Jan. 4, 2016) (Voorhees, J.). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Abstract or conjectural doubts, minor discrepancies, and points irrelevant to the "material" facts are not genuine or significant and do not cast sufficient doubt on the validity of testimony to preclude the entry of summary judgment. *Emmett*, 532 F.3d at 297; *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006). The non-movant cannot demonstrate a triable issue of disputed fact by building one inference upon another. *Emmett*, 532 F.3d at 297 (citing *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Although it is certainly true that "the facts and all reasonable inferences must be viewed in the light most favorable to the non-moving party," *Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996) (en banc), it is equally true that a court is "well within its discretion in refusing to ferret out the facts [and inferences] that counsel

has not bothered to excavate." *Cray Commc'ns. Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 396 (4th Cir. 1994).

      B. <u>Defendant Stewarts' Contributory Negligence Defense</u>

In its Fourth Affirmative Defense, Defendant Stewarts alleges that it should not be held liable for damages because the Plaintiff was contributorily negligent[4] "in failing to follow the [D]efendant's recommendation[] to replace the entire [perforation] system [and] in failing to provide any inspection or quality control[.]" [Doc. No. 12] at p. 5. Plaintiff has moved for summary judgment on each of these two grounds specifically raised by Defendant.[5] The Court will address each of these contentions in turn.

      1. *Plaintiff is Entitled to Summary Judgment as to Defendant Stewarts' "Choice" Defense*

Plaintiff first argues that its decision to go with the cheaper and less intrusive option for improving its perforation system – i.e., replacing the system's nylon brush roller with a Tampico fiber brush – was not (and cannot be) contributory negligence as a matter of law. *See* [Doc. No. 22] at pp. 4-6. In support, Plaintiff contends that its decision was merely a discretionary business choice between two reasonable alternatives offered by Defendant Stewarts; the other option being an expensive overhaul of the perforation system itself. *Id.*

Defendant Stewarts has not attempted to counter this argument and has not provided this Court with any authority demonstrating that the Plaintiff's business decision creates a jury issue

---

[4] The defense of contributory negligence is generally conceived to be a tort defense only; however, it is also a statutory defense to a products liability action under North Carolina law. *See* N.C. Gen. Stat. Ann. § 99B-4(3). Though N.C. Gen. Stat. Ann. § 99B-4(3) clarifies common law principles of contributory negligence, *see Nicholson v. American Safety Utility Corp.*, 346 N.C. 767, 488 S.E.2d 240, 244 (N.C. 1997), per statute, the defense applies against *any* products liability action, whether it sounds in contract or tort. *Compare* N.C. Gen. Stat. Ann. § 99B-4 *with* N.C. Gen. Stat. Ann. § 99B-1.2.

[5] Defendant also raised a third "catch all" defense by asserting that contributory negligence bars relief to Plaintiff "in such other and further respects as will be determined during discovery and/or at trial." [Doc. No. 12] at p. 5. However, Plaintiff did not clearly move for summary judgment on this aspect of the defense.

on this theory of its defense. *See* [Doc. No. 23] at pp. 1-3. While novel, the Court is not convinced Defendant has demonstrated that Plaintiff's choice was, in-and-of-itself, sufficient to allow a reasonable jury to find negligence on Plaintiff's part. Indeed, the record shows that Tampico brushes are "widely used in the industry[.]" [Doc. No. 21-1] at p. 28. Defendant has neither rebutted nor contested this fact in its filings – thus, the Court finds that the wide-spread use of Tampico brush rollers in the Plaintiff's industry is an undisputed and material fact relating to Defendant's affirmative defense.[6] If the brushes are widely used and accepted in Plaintiff's industry, the decision to use them, *ipso facto*, cannot constitute an act of negligence. Defendant has, therefore, failed to present a jury issue on this portion of its defense. Accordingly, the Court **GRANTS** partial summary judgment to Plaintiff on this specific issue.

2. *A Disputed Issue of Fact Exists on the Remainder of the Fourth Affirmative Defense*

Plaintiff next argues that Defendant's affirmative defense fails as a matter of law because any assertion that Plaintiff failed to inspect or control the quality of the perforation process while the Tampico brush was in use relates to a mitigation of damages defense – not contributory negligence. [Doc. No. 22] at pp. 6-7. Defendant opposes Plaintiff's characterization of this portion of the defense. Defendant argues that the "inspection or quality control" defense does not concern Plaintiff's post-harm duty to mitigate its damages; rather, Defendant asserts that the true issue is whether Plaintiff exercised reasonable care in operating its perforation machine after installing and using the Tampico brush roller. *See* [Doc. No. 23] at pp. 2-3. Defendant has introduced the Rule 30(b)(6) deposition of Industrial Brush, as well as portions of its expert's report,[7] to show that

---

[6] Indeed, Defendant's designated expert admits that the Tampico fiber brush is "the industry standard . . . for hot pin perforating." [Doc. No. 23] at p. 19.
[7] In its brief, Plaintiff argues that the Court should disregard Defendant Stewarts' expert report because Defendant purportedly served Plaintiff with an untimely expert designation. *See* [Doc. No. 22] at p. 3 n.1. By email correspondence dated July 29, 2015, the parties agreed to extend the deadline for serving the reports of defense

Plaintiff's perforation system subjected the Tampico brush roller to excessive heat, which dried out the bristles and caused them to break-off into its plastic film products. *See* [Doc. No. 23] at pp. 2-3, 5-15, 16-30. Defendant contends that Plaintiff's failure to monitor and correct the high temperatures its system applied to the Tampico brush, so as to prevent the brush from failing, is an act of contributory negligence that proximately caused Plaintiff's alleged damages. *Id.* Essentially, Defendant contends that it is disputed whether an inherent defect in the brush itself or the Plaintiff's own negligence caused the Tampico brush to fail. *Id.*

The burden of proving contributory negligence is on the defendant. *Nicholson v. American Safety Util. Corp.*, 346 N.C. 767, 488 S.E.2d 240, 244 (N.C. 1997). The existence of contributory negligence is ordinarily a question for the jury. To be clear, North Carolina law requires that "[a] trial court must consider any evidence tending to establish [the] plaintiff's contributory negligence in the light most favorable to the defendant, and if diverse inferences can be drawn from it, the issue must be submitted to the jury." *Cobo v. Raba*, 347 N.C. 541, 495 S.E.2d 362, 365 (N.C.

---

experts until August 7, 2015. *See* [Doc. No. 23] at p. 31; *see also* Fed. R. Civ. Pro. 29(b) (allowing parties to stipulate to and modify discovery deadlines). On August 7, 2015, the expert report of Clyde D. Evans was served on Plaintiff. *See* [Doc. No. 23] at p. 33. On August 17, 2015, Defendant Stewarts designated Clyde Evans as its expert in this litigation. *See* [Doc. No. 23] at p. 34. First, Plaintiff's objection has not been properly presented – Plaintiff objects to Defendant's expert designation within a single footnote of its brief in support of partial summary judgment. Plaintiff has filed no motion *in limine* and has filed no *Daubert* motion to challenge Defendant's expert. Regardless, even construing Plaintiff's objection as having been properly presented, the Court finds the objection has no merit. Though Defendant Stewarts' designation of Mr. Evans was ten (10) days late (notably, not thirty-three days late, as Plaintiff's brief contends), Plaintiff was actually provided with Mr. Evans' expert report on the agreed deadline of August 7, 2015. *See* [Doc. No. 23] at p. 31; *see also* Fed. R. Civ. Pro. 29(b). Thus, Plaintiff had sufficient time to depose Mr. Evans and test his opinion before discovery closed in January 2016. *See* [Doc. No. 20] (extending discovery deadline to January 1, 2016). Plaintiff claims that it has been prejudiced by Defendant Stewarts' August 17, 2015 designation, claiming that "Stewarts has not made [Mr. Evans] available for deposition, despite requests." [Doc. No. 22] at p. 3 n.1. Yet, Plaintiff has brought forth no evidence showing that it subpoenaed Mr. Evans for deposition anytime between August 17, 2015 and January 2016, nor that Mr. Evans refused to attend any such deposition. Further, Plaintiff never filed a motion to compel Mr. Evans' deposition prior to the close of discovery. Thus, any prejudice suffered by Plaintiff arising from the designation of Mr. Evans as Stewarts' expert in this litigation is the result of Plaintiff's failure to diligently prosecute its claims, not Defendant's ten-day-late designation. Accordingly, the Court finds that Plaintiff has failed to demonstrate prejudice resulting from Defendant's late designation, and therefore Plaintiff's objection to the expert report is **OVERRULED**. *See*, *e.g.*, *Michelone v. Desmarais*, 25 Fed. App'x 155, 2002 WL 18766 (4th Cir. 2002) (affirming court's decision to allow a party's late designation of an expert where there was no evidence of prejudice to the opposing party).

1998) (citing *Atkins v. Moye*, 277 N.C. 179, 176 S.E.2d 789, 793 (N.C. 1970)). If there is more than a *scintilla* of evidence showing that the plaintiff was contributorily negligent, the issue is a matter for the jury, not for the trial court. *See Boyd v. Wilson*, 269 N.C. 728, 153 S.E.2d 484, 486 (N.C. 1967). A plaintiff is contributorily negligent "if his conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety." *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 268 S.E.2d 504, 507 (N.C. 1980).

Having considered the evidence submitted both in support and in opposition to the Plaintiff's Motion, the Court finds that Defendant Stewarts has demonstrated a genuine issue of material fact pertaining to the remainder of its contributory negligence defense, as such is raised in its Fourth Affirmative Defense. Plaintiff's attempt to construe the defense as a mitigation of damages defense misunderstands both the Defendant's position and the evidence; therefore, its argument is meritless. Accordingly, except as to the Court's holding in Section II.B.1., *supra*, the Plaintiff's Motion for Partial Summary Judgment is hereby **DENIED**.

**III. DECRETAL**

**IT IS, THEREFORE, ORDERED THAT**

(1) Plaintiff's Motion for Partial Summary Judgment (Doc. No. 21) is **GRANTED-IN-PART**;

(2) Plaintiff's Motion for Partial Summary Judgment (Doc. No. 21) is **DENIED-IN-PART**; and

(3) This matter shall proceed to trial during the Court's May 2016 term, in accordance with the Court's Amended Pre-Trial Scheduling Order. [Doc. No. 15]; [Doc. No. 20].

**SO ORDERED**.

Signed: April 11, 2016

*[signature]*

Richard L. Voorhees
United States District Judge